**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Nathan Charles KOTRLIK, and Craig Ronald Gaevert, Defendants-Appellants.**

**Nos. 72–1577, 72–1589.**

United States Court of Appeals, Ninth Circuit.

Aug. 11, 1972.

Certiorari Denied Dec. 4, 1972.

See 93 S.Ct. 539.

Stephen Adams (appeared), of Adams & Adams, San Francisco, Cal., for Nathan Charles Kotrlik.

J. Thomas Hannan (argued), of Lovitt & Hannan, San Francisco, Cal., for Craig Ronald Gaevert.

Fredric F. Tilton, Asst. U. S. Atty. (argued), F. Steele Langford, Asst. U. S. Atty., James L. Browning, Jr., U. S.

Atty., San Francisco, Cal., for the United States.

Before BARNES and TRASK, Circuit Judges, and BATTIN,* District Judge.

PER CURIAM:

All parties to these companion and consolidated appeals agree that the sole question involved is whether the 1969 draft lottery, which assigned appellants their induction priorities, was required to be "statistically random".

Prior to 1970, Selective Service registrants were called for induction in order of their ages, the oldest first. In 1970, Random Selection Numbers (RSN's) were chosen by assigning each day of the year a number from 1 to 366, and picking each number by random selection. Each number chosen was the RSN for all men whose birthdays fell on such date. Secondary numbers were assigned to the letters of the alphabet to distinguish among men with the same birthdate. Secondary numbers referred to the first letters of the registrants first and last names.

Appellants admit they cannot and are not seeking a "pure" or "scientifically perfect" random lottery, but assert that the selection should be "more random" than they assert it was.

The District Court's opinion summarized the drawing procedure, as appears in Note 1.[1] The full description of the mixing, tumbling, drawings, etc., which occurred appears in the Government's Brief, pp. 3 to 7, and need not be repeated here.

Appellants assert there was an insufficient mixing of the capsules. The trial court denied appellants' pretrial motion for the appointment of expert witnesses to criticize the procedure followed, stating that there was no plan, purpose or pattern in the drawing of the numbers, and hence it was a "random drawing", as the term random is usually understood and used in ordinary English language. The court below in describing the drawing said:

"[W]hile perhaps not scientifically perfect, the draft lottery of December 1, 1969 was conducted in a perfectly

---

* Honorable James F. Battin, United States District Judge, District of Montana, Billings, Montana, sitting by designation.

1. "Three hundred and sixty-six cylindrical capsules, each an inch and one-half long and one inch in diameter, were used. Each of the capsules had a removable and replaceable cap or lid.

"In preparation for the lottery, thirty-one capsules were counted out and a slip of paper bearing one of the thirty-one dates in January was enclosed in each. These January capsules were then placed in a large, wooden box, recounted and pushed to one side with a card-board divider, leaving the rest of the box empty.

"The twenty-nine February capsules, similarly prepared, were poured into the empty portion of the box, recounted and then scraped with the divider into the January capsules. The same process was followed for each of the subsequent months. As a result, January capsules were mixed with the other capsules eleven times, those for February ten times and so on through December, the last accordingly having been mixed with the others only once up to this point.

"The box was shut and shaken or tumbled several times. It was then carried to a secure room in the Selective Service Headquarters building. On the day of the drawing, the box was taken to the area where the drawing was held. In public view before a large press contingent, the capsules were poured from the box into a two-foot-deep bowl. Once in the bowl, the capsules were not stirred.

"The drawing was performed by some fifty impartial persons who drew the capsules one at a time. As each capsule was drawn, it was handed to an assistant who opened it and read off the date. The first date drawn—September 14—was assigned priority number 1, the second priority number 2, and so on. The last date drawn—June 8—was assigned priority number 366.

"There is some indication that the persons who drew the capsules generally did so from near the top of the bowl, although sometimes they would reach to the middle or the bottom. The dates contained in the capsules were, of course, not visible until after the capsule was opened and the paper within examined."

fair manner. There was no discrimination. There was no inequity. The Selective Service officials did not deliberately select the number assigned to defendant's birthdate any more than the defendant himself deliberately chose the date of his birth." (Appeal Record page 114, at 117.)

We agree, and *affirm* the trial court's decision.